UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| WILLIAM DOUGLAS DAWSON, | ) | Civil Action No.: 4:14-cv-3259-DCN-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| WARDEN LARRY CARTLEDGE and | ) | |
| ASSOCIATE WARDEN FLORENCE | ) | |
| MAUNEY, in their individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

I.     **INTRODUCTION**

Plaintiff, who is proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights to due process and to be free from cruel and unusual punishment.  Presently before the court is Defendants' Motion for Summary Judgment (Document # 41).  Because Plaintiff is proceeding pro se, he was advised pursuant to Roseboro v. Garrison, 528 F.3d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion could result in dismissal of his Complaint.  Plaintiff filed a timely response (Document # 45).  All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC.  This report and recommendation is entered for review by the district judge.

II.     **FACTS**

In his Complaint, which he declared to be true under penalty of perjury, Plaintiff asserts

On 7-30-12, I was bright to lock-up by Major Bush for what he said (my D.H.D. form stated) a [sic] "Investigation."  A [sic] institution investigation is only a 21 day procedure, 30 days if the institution gets the 9 nine extension.  This means that on 8-29-12 my investigation was over with, but Warden Larry Cartledge along with Ass. Warden Mauney violated my 14th Amendment constitutional rights by depriving me illegally of my liberty by holding me in lock-up (segregation) for two years (7-30-12 through 3-25-14) without reason or cause!  This illegal deprivation of liberty by these

> Defendants was by Defendant Cartledge explain [sic] as being done because the Plaintiff had old disciplinary detention time (D.D. time), but when the Plaintiff was transferred from prison general population to segregation there was no due process ever given the Plaintiff!  There was no infractions (the Plave never had broken any prison rules), no incident reports (charge papers), no hearing, nor any logical legitimate penological purpose that would justify the Defendants holding the Plaintiff in segregation for two (2) straight years when no South Carolina Department of Correction (SCDC) rules or regulations had been violated, nor was there any explanation ever given to why the Defendants transferred the Plaintiff from prison general population to segregation to excessive confinement.

Complaint p. 3.  Plaintiff alleges that these actions violated him of his due process rights and subjected him to cruel and unusual punishment.

Plaintiff began his 30 year sentence for armed robbery on March 18, 1998. While at the Perry Correctional Institution (PCI), Plaintiff accumulated numerous days of disciplinary detention (DD) in the restricted housing unit (RHU).  On January 3, 2010, Plaintiff received 155 days of DD for exhibition and public masturbation. On June 29, 2010, Plaintiff received 90 days of DD for exhibition and public masturbation. On July 1, 2010, Plaintiff received 180 days of DD for exhibition and public masturbation. On September 5, 2010, Plaintiff received 180 days of DD for exhibition and public masturbation. On September 23, 2010, Plaintiff received 350 days of DD for exhibition and public masturbation. On March 23, 2011, Plaintiff received 360 days of DD for exhibition and public masturbation. On August 9, 2011, Plaintiff received 365 days of DD for possession of a weapon. On December 21, 2011, Plaintiff received 177 days of DD for threatening to inflict harm on an employee.  See Inmate Search Detail Report (Ex. to Def. Motion).  Thus, from January 3, 2010, through December 21, 2011, Plaintiff amassed 1,857[1] days, over five years, of DD.

Defendant Florence Mauney, the Associate Warden of the Perry Correctional Institution

---

[1]Based upon the number of days listed for each conviction, the total days of DD time appears to be 1,857.  However, it is noted that Defendants stated the total number of days in their brief as 1,668.

(PCI), avers that

> [t]he administration recognizes that inmates sentenced to very long periods in RHU may lose any incentive to conform to the rules within RHU. Inmates serving very long sentences may lose sight of being released from RHU and as a result may become hopeless and frustrated thereby leading to further misbehavior. Non-compliant and disruptive RHU residents increase the risk of harm to both staff and inmates, as well as frustrate the delivery of service to other inmates.
>
> The administration has an unwritten policy that RHU inmates may be reviewed on a case by case basis and may be offered an opportunity to leave RHU and return to the general population before serving their entire disciplinary sentence(s). These inmates understand that any misconduct while in general population will result on their immediate return to RHU to complete their original disciplinary sentence(s).

Mauney Aff. ¶¶ 4-5. Mauney avers that Plaintiff was offered this opportunity and was released back into general population with his promise that his behavior would not be disruptive. Id. ¶ 6. Plaintiff was warned that he would be returned to RHU to complete his initial DD if he was disrespectful or non-compliant, regardless of whether he was convicted of any further misconduct. Id. After several instances of misconduct while back in the general population, Mauney avers that the administration determined that Plaintiff should be returned to RHU to complete his disciplinary detention. Id. ¶ 7.

Mauney avers that she has reviewed Plaintiff's disciplinary record and compared his sentences for each infraction with the days he spent in RHU. Id. ¶ 9. She avers that he served time in RHU only for the offenses for which he was adjudicated guilty and that the number of days he spent in RHU was correct and justified based upon his offenses. Id. She avers that at no time was Plaintiff sentenced to RHU based upon the administration's discretion. Id.

Plaintiff does not challenge the accuracy of the DD time he accrued between January 3, 2010, through December 2, 2011.[2] He does not present evidence or otherwise argue that he was denied due

---

[2]He does argue that Defendants improperly relied on charges from April of 2012 "to back up his reason for reinstating the old D.D. time" because he never received any DD for these charges. Pl. Response p. 2. However, as set forth above, Defendants rely only on DD received

process in the adjudication of those offenses. Rather, he argues that he was initially told he was

being placed in RHU during the pendency of an investigation and then later told that old disciplinary

time was being reinstated. He attaches to his response a form, dated July 30, 2012, which states that

he is being placed in pre-hearing detention to "maintain the integrity of an investigation" and because

his "presence in the population would create a threat to the safety, security, and/or order of the

institution." Pre-hearing Detention Placement/Extension Form (Ex. 5 to Pl. Response). He also

includes one page of an affidavit by Defendant Mauney, submitted in another case[3], in which she

states that Plaintiff was returned to disciplinary detention for refusing directives to uncover his cell

window and threatening to beat up his cell mate. Affidavit ¶ 4 (Ex. 8 to Pl. Response). Plaintiff also

submitted a response he received on October 22, 2015, from Robert Ward, the Deputy Director of

Operations for SCDC, in which Mr. Ward addresses Plaintiff's concern that he was being held in

SMU (Special Management Unit) for no reason:

> Your records indicate that you were previously afforded the opportunity to be
> released back into general population as long as you maintained behavior consistent
> with inmates housed in general population and didn't get into further trouble. Then
> you were placed under "investigation," and even though no new charges were
> brought against you, your behavior clearly indicated that general population is not the
> place for you at this time. According to your disciplinary record, you have
> disciplinary detention until July 24, 2015.

Inmate Correspondence Form (Ex. 14 to Pl. Response).

## III.    STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary

judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to

_____

between January 3, 2010, and December 21, 2011.

[3]See Dawson v. Bush, et al, 4:13-2236-DCN-TER.

judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV.    DISCUSSION

Plaintiff brings this action pursuant to 42 U.S.C. § 1983.  Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). To be successful on a claim under § 1983, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).  It is undisputed that Defendants were acting under color of state law at all times relevant to this action. Plaintiff alleges that Defendants violated his constitutional rights by depriving him of due process prior to placing him in disciplinary detention and subjecting him to cruel and unusual punishment by leaving him in disciplinary detention from July 30, 2012, through March 25, 2014.

Under Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) when an action might result in a prisoner's loss of a constitutionally protected liberty interest, minimal due process is required.  Under Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), these limited due process rights are required in an inmate disciplinary action that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." "Whether confinement conditions are atypical and substantially harsh 'in relation to the ordinary incidents of prison life' is a 'necessarily ... fact specific' comparative exercise." Incumaa v. Stirling, No. 14-6411, 2015 WL 3973822, at *7 (4th Cir. July 1, 2015), as amended (July 7, 2015) (citing

-6-

Beverati v. Smith, 120 F.3d 500, 502, 503 (4th Cir.1997)).  In this case, other than the duration of RHU, Plaintiff fails to present evidence that his conditions of confinement were atypical or substantially harsh in comparison to ordinary prison life.  As such, he fails to show that any liberty interest was implicated when he was placed in disciplinary detention.

Nevertheless, even if he had produced sufficient evidence to establish a liberty interest giving rise to due process protections, he fails to show that those due process rights were violated.  Although he argues that he was placed in RHU for no reason, the record reveals that he had been convicted of and received DD time for numerous infractions.  He does not argue that he did not receive due process for these convictions.  He was returned to the general population prior to completing his DD time but was warned that he could be returned to RHU upon further misconduct.  Thus, he was not placed in RHU for no reason.  Rather, he was placed there to complete his previously sentenced DD time.  Thus, to the extent a liberty interest was implicated when he was placed in RHU, he fails to show that he was denied due process prior to being placed there.

In addition, segregation is not per se cruel and unusual punishment under the Eighth Amendment.  Ross v. Reed, 719 F.2d 689, 697 (4th Cir.1983).  The Fourth Circuit has stated that "[t]he duration of an inmate's stay in segregation is not controlling on the issue of cruel and unusual punishment, even when that duration is quite long."  Id.  "The fact that the segregated confinement is prolonged and indefinite [is insufficient] in itself to command constitutional protection, though it is a factor to be considered."  Sweet v. S. Carolina Dep't of Corr., 529 F.2d 854, 861 (4th Cir. 1975); see also In re Long Term Admin. Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 471 (4th Cir. 1999) (noting that length of time is simply one consideration among many and finding that segregation of three years, with no release in the foreseeable future, did not amount to cruel and unusual punishment).  To establish a violation of the Eighth Amendment, an inmate

-7-

"must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.1993). The Fourth Circuit has noted that "isolation from companionship, restriction on intellectual stimulation[,] and prolonged inactivity, inescapable accompaniments of segregated confinement, will not render [that] confinement unconstitutional absent other illegitimate deprivations." Sweet, 529 F.2d at 861 (internal quotation marks omitted); see also Five Percenters, 174 F.3d at 471 (finding no serious deprivation where inmates complained that they were confined to their cells for twenty-three hours per day without radio or television, that they received only five hours of exercise per week, and that they could not participate in prison work, school, or study programs). Plaintiff has not alleged or shown any serious deprivation of a basic human need and, thus, fails to establish a claim for cruel and unusual punishment.

In sum, because Plaintiff alleges only that he was placed in disciplinary detention for a lengthy amount of time for no reason, he has failed to show that Defendants' actions resulted in his loss of a constitutionally protected liberty interest, or that he suffered any cruel or unusual punishment due to the conditions of his confinement. Therefore, summary judgment is appropriate on his claims.

## V.    CONCLUSION

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment (Document # 41) be granted and this case dismissed in its entirety.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

August 7, 2015
Florence, South Carolina

**The parties are directed to the important information on the following page.**